COLEMAN *v.* WILLIAMS & MILLER.

Opinion delivered January 29, 1923.

SALES—FULFILLMENT OF WARRANTY.—In an action for the balance due on the purchase price of a cotton cleaner, purchased under a stipulation that "twenty days' use of cleaner will be conclusive evidence of fulfillment of warranty and acceptance," *held,* where it appeared that such cleaner had been used several months before any objection was made to it, a directed verdict for plaintiff was proper.

Appeal from Lonoke Circuit Court; *George W. Clark,* Judge; affirmed.

*Williams & Holloway,* for appellant.

There was an issue of fact which should have been submitted to the jury, and it was wrong to direct a verdict. 132 Ark. 441.

Appellant contended there was a breach of warranty under which he was entitled to recover under the authority of 79 Ark. 506.

Payment of part of the account was made upon promise to remedy defects in the machinery. The acceptance or retention of goods sold does not waive the breach of warranty. 35 Cy. 430. See also 104 Ark. 573; 53 Ark. 155. Where retention and use has been induced by request or promise of the seller, there is no waiver of the warranty. 35 Cyc. 433. Under similar facts part payment is not a waiver. 35 Cyc. 433-4.

*Gray & Morris,* for appellee.

The contract stipulated that "twenty days' use of the cleaner will be conclusive evidence of fulfillment of warranty and acceptance." No complaint was made within this time, but by three separate acts, after this time, the contract was ratified. A promise by appellee after this time to repair was without consideration and not binding.

WOOD, J. This action was instituted by the appellees against the appellant to recover the sum of $210.83, the balance alleged to be due on a promissory note executed by the appellant. The appellant answered ad-

mitting that he executed the note for $410.83, July 9, 1917, payable on the 9th of November, 1917; that on January 17, 1918, he paid on the note the sum of $200. He further alleged that the note was executed for the purchase price of a certain piece of gin machinery called a cleaner; that the appellant purchased the cleaner of the appellees upon the appellees' guaranty that the cleaner would perform the work of cleaning cotton in an efficient manner and upon the representation of appellees that the cleaner would be beneficial to the appellant to the amount of at least one-fourth cent per pound on all cotton put through the same; that this warranty of appellees had been broken in that the cleaner would not do the work claimed for it; that the appellant notified the appellees that the same was worthless, and asked them to put the same in running condition or to come and get it, which appellees refused to do; that appellant notified the appellees, as soon as he had thoroughly tested the machinery and found that it was worthless, and that he now holds the same subject to the order of the court.

By way of cross-complaint the appellant alleged that the appellees were justly indebted to him in the sum of $200, the amount that he had paid on the note, with interest, and for the amounts expended by appellant in an effort to put the cleaner in a good condition.

The appellees introduced the contract under which the cleaner was purchased, which consisted of an order and a contract of warranty, dated May 12, 1916. In the order appellant requested the appellees to ship to the appellant at Coy, Arkansas, the cleaner, describing it, and agreed to pay all freight and charges and to notify the appellees of the arrival of the cleaner, so that they could send a mechanic to supervise the erection of the same. The order was countersigned by the appellees, and the cleaner was shipped to the appellant as therein requested.

The warranty specified that the cleaner was to be "of good material and well made, and to do the work, with proper management." It also provided that if,

upon fair trial, it should not satisfactorily do the work, immediate notice should be given to the appellees and reasonable time allowed them to remedy the defect. It also specified that, if the cleaner could not be made to perform the work, appellees were to take it back. The appellant agreed to properly install and operate the cleaner, according to the directions furnished by the manufacturers, and to pay all expenses incurred in erecting it, if the fault were traceable to incorrect installation and operation according to directions. The warranty also contained this provision: ''Twenty days' use of cleaner will be conclusive evidence of fulfilment of warranty and acceptance. Any failure on the part of the purchaser to comply with his contract releases the warranty entirely.''

Appellees also introduced the note, which was a plain promissory note, executed by the appellant to the appellees July 9, 1917, by which the appellant agreed to pay to the order of appellees the sum of $410.83, due November 9, 1917, with interest at the rate of eight per cent. per annum from date until paid. Indorsed on the back of the note was the following: ''Jany. 17, Cash, $200.''

A witness, brother of the appellant, and a mechanic in charge of the machinery, testified substantially as follows: The cleaner was installed by appellant and the agent of the appellees late in the season of 1916. It was tried out two weeks later. As long as the cotton was fed to the cleaner real slowly, it would do all right, but when they tried to run three or four gin stands with it, it would not work. Appellant tried it one year. The appellees were notified that it would not work. The agent of the appellees came back in December, but didn't get the cleaner to working at that time. The cleaner would have to stop two or three times a day and cut off the cotton. Witness wrote a letter to appellees in August, 1916, and asked them to come and install the machine. It might have remained there till November or December before appellant gave it a real test. Witness wrote a

letter to appellees November 4, 1916, which was signed by the appellant, commending the machine. At that time they hadn't used the machine enough to know what it would do. It had then been installed probably fifteen or twenty days. Witness left appellant in January, 1917, and did not know personally how it worked after he left. The machine was taken out in the fall of 1919, just before they started the season. Witness complained to his brother about the machine, and his brother wrote to the appellees three or four times to send a man to fix it, or to move it. Keenan, the agent of the appellees, came a few days after witness quit, and tried to fix it.

Another witness testified that he was present when the machine was installed and an attempt was made to use it; that it would choke up, and they would have to dig the cotton out. It was in 1918 the appellees had their man there to fix it. Witness worked continuously from 1916 up to the time he gave his testimony, and the machine never did work satisfactorily. Appellant tried to use it all along. When it would choke up, they would throw it off.

The appellant himself testified that he bought the machine in May, 1916. He tried to use it, and could never make it work satisfactorily. It was installed the latter part of August or September. Appellant didn't give it a thorough test until the latter part of 1916, because he didn't need it badly until then. The latter part of November and December appellant gave it a thorough test and began to use it for the purpose for which it was bought. It did very well with clean cotton, but would choke up and detain appellant for several hours if the cotton was not clean. Appellant tried to get appellees to remedy the defects in the latter part of November. The machine choked up every time it was used, and appellant gave appellees notice of that fact. Appellant made a payment of $200 in January, 1918, because the appellees promised to make the machine satisfactory, and the appellant told the appellees they would have to do so.

When the appellant paid the $200, he told appellees' cashier that he would pay the balance shortly, for the reason that he had several letters from appellees saying they were going to make the machine satisfactory. As soon as appellant saw they would not remedy the defect, he took the machinery out and gave appellees notice to come and get the same. They didn't come, and made no response to appellant's letters. The cleaner was connected with the gin, and appellant had to use it or take it out entirely.

The above are the facts upon which the court instructed the jury to return a verdict in favor of the appellees for the amount sued for, with interest. The jury returned such a verdict, and the court entered a judgment in favor of the appellees for the sum of $210.83 and for costs, from which is this appeal.

The ruling of the court was correct. There was a clause in the contract under which the machine was purchased which reads as follows: "Twenty days' use of the cleaner will be conclusive evidence of the fulfillment of warranty and acceptance." Under this provision of the contract the appellant could not, after the installation of the cleaner, use the same for more than twenty days and then set up that there was a breach of warranty on the part of the appellees by not furnishing a machine that was satisfactory to the appellant. The very purpose of this provision of the warranty, as we construe it, was to give the appellant twenty days within which to use and test the cleaner, and if the appellant did not, within that time, notify the appellees that the cleaner was unsatisfactory, he could not thereafter continue to use the machine in an endeavor to make the same work to his satisfaction, and, failing to do so, claim that appellees had violated their contract of warranty. The manifest purpose of the provision of the warranty quoted, as plainly expressed therein, was to make twenty days' use of the machine conclusive evidence of the acceptance thereof

on the part of the appellant and the fulfillment of the warranty contract by the appellees.

The undisputed testimony shows that the appellant did use the cleaner more than twenty days after its installation, and such use was not at the request of the appellees. The appellant wrote to the appellees as follows: "We have one of your machines in our gin, and we think it has been very valuable to us." This letter was written after appellant had used the machine. The provision of the contract quoted contemplates that the appellant should test out the machine within twenty days after its installation, and make whatever objection he had to offer thereto, and, if he didn't do so within the twenty days, he was foreclosed from setting up a breach of the warranty on the part of the appellees.

The record presents no error, and the judgment is therefore affirmed.